IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

TORGER MCRAE                                                                     PLAINTIFF

v.                                      Civil No. 1:18-CV-01018

CAMERON OWENS, Administrator
Ouachita County Detention Center                                      DEFENDANT

## **MEMORANDUM OPINION**

This is a civil rights action filed *pro se* by Plaintiff, Torger McRae, under 42 U.S.C. § 1983. The parties have consented to the jurisdiction of a magistrate judge to conduct all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 28). Currently before the Court is a Motion for Summary Judgment filed by Defendant Cameron Owens. (ECF No. 39). Plaintiff has filed a response. (ECF No. 45). The Court finds this matter ripe for consideration.

## **I. BACKROUND**

Plaintiff is currently being held in the Ouachita County Detention Center ("OCDC") awaiting trial on pending criminal charges. (ECF No. 9, p. 3). Plaintiff filed his Complaint on March 6, 2018, in the Eastern District of Arkansas. (ECF No. 2). On March 8, 2018, the case was transferred to the Western District of Arkansas, El Dorado Division. (ECF No. 4). That same day, the Court directed Plaintiff to submit a completed IFP application and file an Amended Complaint to clarify his claims against the defendants. (ECF Nos. 6, 7). On March 22, 2018, Plaintiff filed his Amended Complaint naming Cameron Owens and others as defendants. (ECF No. 9). Plaintiff's IFP application was approved that same day. (ECF No. 11).

In his Amended Complaint, Plaintiff asserts claims against Defendant Owens for retaliation, denial of medical care, unlawful conditions of confinement at the OCDC, and denial of access to legal materials.[1] Specifically Plaintiff alleges:

> Despite numerous complaints, request, and grievances over living conditions in the OCDC I was put I in the hole for my complaints and I eventually got a bacterial infection in which it took over 14 days to get me to the hospital where I was hospitalized the infection was so severe. The jail also refused to pay my hospital bill or take any corrective measures to prevent any further illnesses due to inhumane living conditions. As of today there is still black mold growing in my pod, wastewater covering the bathroom floor at all times, cracked dinner trays being put on the floor during chow, no rags & bottles to sanitize the bathroom, hot prepared food being served cold, and disrespectful and threatening comments by staff threatening administrative segregation for utilizing the grievance procedure over above living conditions….
>
> I have a active civil case and have utilized the request & grievance procedure here at the jail trying to visit the law library and I have been told several times, by e-mail by defendant [Owens], that there is no law library or law material here at the jail. I have incurred numerous postage cost and possible missed deadlines in not being able to access legal materials…

(ECF No. 9, pp. 7-8).

Plaintiff sued Defendant Owens in his individual and official capacities. He is seeking compensatory and punitive damages. Plaintiff also requests "disciplinary actions/sanctions against defendants, policy & procedure review by outside agency, compliance check in jail to ensure ACA standards." (ECF No. 9, p. 10). On April 17, 2018, the Court entered a screening order pursuant to 28 U.S.C. § 1915A dismissing the official capacity claims against Defendant Owens.[2] (ECF No. 14, p. 9). Taken in the light most favorable to Plaintiff, the relevant facts are as follows.

---

[1] On February 14, 2019, the Court entered a Memorandum Opinion and separate Order granting motions for summary judgment filed by the other named defendants John Voss, Houston Bradshaw and Jonathan Chambers. (ECF Nos. 46, 47). All claims against these defendants have been dismissed.
[2] Some of the claims against the other defendants were also dismissed.

2

Plaintiff was booked into the custody of the OCDC on August 29, 2017. At intake, Plaintiff completed an Inmate Medical Form informing OCDC personnel of his past and present medical conditions. (ECF No. 41-4, pp. 1-2). Plaintiff stated he was taking Tramadol, a muscle relaxer, and ibuprofen. He also stated his left elbow was dislocated, he had pins in his back and hip, glass in his forehead, and was partially blind in his right eye. *Id.* Prior to being booked into the OCDC, Plaintiff's dislocated elbow was evaluated by Dawn Hopper, APRN, on August 16, 2017. Nurse Hopper noted Plaintiff had failed to properly utilize the therapy recommended to him to treat his dislocated elbow.[3] (ECF No. 41-4, pp. 4-6).

On August 31, 2017, Plaintiff's family brought his tramadol medication to the OCDC. (ECF No. 41-5, p. 15). That same day, Plaintiff submitted a grievance stating, "Your jailers threatened me slam door on me and pull taser. Request to talk to jail administrator." James Bolton responded stating in part, "Mr. McRae…I am unable to find any video evidence that anyone has mistreated you in any way." (ECF No. 41-3, p. 7). Plaintiff also filed a medical request that day stating, "I need my meds my arm swole jailer hit me with door and hip rewind camera." In response, Nurse Mendenhall requested to see Plaintiff at pill call. (ECF No. 41-5, p. 15).

On September 1, 2017, Plaintiff submitted a medical request stating, "I'm sorry I'm just now checking it I'm in pain I need my meds but can you call for me thank you." Nurse Mendenhall responded as follows:

> Pill call is at 9:30 in the morning and again at 9:30 at night. Your medication has been approved by the doctor for you to have at those times if you need it, and it can only be dispensed at the times that it is in the system for. You did not come to pill call this morning so be sure you do not miss pill call tonight.

---

[3] It is not clear from the record where Dawn Hopper is employed. She does not appear to be associated with the OCDC.

(ECF No. 41-5, p. 15). Two days later, Plaintiff submitted another medical request stating, "My arm and elbow swole its numb I think its repop can't sleep or bend it and its still broke I need help." In response, Nurse Mendenhall requested to see Plaintiff at pill call. *Id.* On September 6, 2017, Plaintiff submitted a medical request stating "I done told them I'm hurting bad" to which Nurse Mendenhall responded, "You received your medication at pill pass and can receive another dose at evening pill pass. If that is not working for you then you can request to see the doctor." (ECF No. 41-5, p. 13).

On September 13, 2017, Plaintiff was involved in an altercation with another inmate, as documented by OCDC Officer Zach Craig:

> On September 13, 2017 at approximately 1030 hours, Captain Cameron Owens, Jail Supervisor James Smith, and myself (Detention Officer Zach Craig) were called by the tower operator Cody Bright that there was two Inmates in a altercation in B-pod.
>
> Upon our arrival, I observed inmate Torger Mcrae and inmate James Jones arguing with each other. I immediately instructed all inmates to line up on the wall and separated Jones and Mcrae. Bright then informed us that Mcrae was the agresser in the altercation. We removed Mcrae from B-pod searched him and his belongings and placed him in Ad-Seg in cell D-2 for being disorderly.
>
> Additional Notes: the incident was recorded on camera 2 and 8. Mcrae was informed that he would remain in Ad-Seg until further instruction from Administration.
>
> End of Report
> Detention Officer Zach Craig
> OCDC 126

(ECF No. 41-7, p. 2). Later that same day, Nurse Mendenhall submitted the following Inmate Incident Report involving Plaintiff:

> At 15:30 I was notified by the tower that this inmate was asking for the nurse due to chest pains. I requested that Correctional Officers Craig and Bright accompany me to D Pod to assess this inmate. Upon arrival his skin was warm and dry to touch, PERLA, respirations were 60 and unlabored, pulse was 84 and regular, Blood pressure was 130/90. The inmate did not appear to be in any distress at that time.

4

> He stated he was having a hard time breathing and was force to sit on the floor by his door flap to get any air flow. He did not seem to have any trouble breathing and stated he did not know why he was placed in the AD Seg unit. He requested to see the doctor for SOB and chest pain. I told him I would place him on the list.

(ECF No. 41-4, p. 3).

On September 14, 2017, Plaintiff submitted five requests. In the first one Plaintiff states:

> being ecuse of things I anit did every body and b pod no charging me for a mat and blanket everybody gt 4thats messed up put me and whole for aruing bt lertft other person ova thur he evevn told thm I dididnt do nuttin james jones we both tod thm they lock me up and leave him then they took all money of books im beening pick with they denyig me medical stteoin im been cuss out cause I askig for help…Request im scared for my life

(ECF No. 41-3, p. 5). Defendant Owens responded stating:

> According to the Officers involved you were the aggressor in the argument also you were charged for a mat because when you were moved to lockdown your [mat] was damaged to point that it cannot be re-issued to anyone else. And it was not that way when it was issued to you. No one is denying you medical treatment or threatening you. Use the proper channels at the Kiosk and you can request to see a doctor.

*Id.* Plaintiff's second request states, "Problem I'm scared for my life and need help. Been threating by zack, brice, owens, bolton. Request to speak to head person norwood im scared for my life in here." In response, Defendant Owens stated he would speak with Sheriff Norwood about his concerns. (ECF No. 41-3, p. 6). In the third request Plaintiff states:

> Problem bright, zack, and owens Request they picking with me charging me for stuff I anit did cussing me out denying meds and attention they gt me in hole for no reason they done sent two people to fight me I have broken elbow hip replacement bad heart they gt 24 hour camara rewind im speaking out and the truth we all can sit down and look at it I never gt and trouble hur never been to hole im in hole for arguing bt they left james jones in thur the man I was arguing with they didt lock him up jst me bt they suppose to serprae us or lock him down to bt they didn't I been strip tfrom all right I have not did nuttin wrong

(ECF No. 41-3, p. 13). In the fourth request Plaintiff says, "I nd to talk to Mr. Norwood bt how staff threathen me charging me for stuff I have not did denying medical atteonin I'm scared for my

life in the hole." Lance Eberly responded stating, "medical needs must be submitted to the nurse. your locked down, why are youo fearing for your life?" (ECF No. 41-3, p. 13). Plaintiff's last submission on September 14, 2017 was a medical request stating, "they denying me medical atteoin im scared for my life they threating me in hur I nd help." James Bolton responded and informed Plaintiff he had been added to the doctor list. (ECF No. 41-5, p. 13).

On September 15, 2017, Plaintiff was prescribed Tramadol 50mg, Meloxican 15mg, and Gabapentin 300mg. (ECF No. 41-4, p. 8). That same day, Plaintiff submitted one inmate request and two grievances. The first request states, "harassment from owens bolton zack bright threats on me putting stuff in my food and drin taking my money Request David nor wood." (ECF No. 41-3, p. 4). Plaintiff's first grievance states, "I have never cussed out staff or been a problem just because im writing ever thing up about a mat that's already tore up they chargig me im sueing and fle my 198 form on owens Bolton zack bright for taking my money harassment and threating me not giving me my rights as a citizens." (ECF No. 41-3, p. 4). The third grievance states, "im being harassed by Bolton and Cameron owens im in hol bt they didn't ock other person for threating mme lie about a mat already tore. Request David Norwood not owens or Bolton." *Id.*

On September 19, 2017, Plaintiff submitted a medical request stating, "I have not had meds in 5 days". James Bolton responded and informed Plaintiff his medications "be here this evening." (ECF No. 41-5, p. 11). On October 5, 2017, Plaintiff was informed his medications had been refilled. (ECF No. 41-5, p. 11). On October 17, 2017, Plaintiff was informed his medication refills had been ordered. *Id.* at p. 10. On November 17, 2017 Plaintiff was again informed his medication had been refilled. *Id.* at p. 9.

On December 4, 2017, Plaintiff submitted an Inmate Request stating, "Mr. Owens why did it take me 4 months to even go to court I no it take 90 days to be in front of judge its been well ova

that thats the law they done switch court date 3 times can u please help me if you dont mind." (ECF No. 41-3, p. 12). Defendant Owens responded, "Mr. McRae we do not have any control over the courts or your court date. Contact your attorney. Thanks." *Id.* On December 13, 2017, Plaintiff submitted an inmate request stating:

> I need to get copies of my case files or need a chance to review and look over them so I can figure out what going on and my attonery has told me I should have had copies of my case imformation. And I have been waiting on them since I spoke with him yesterday.

(ECF No. 41-3, p. 11). Doug Wood informed Plaintiff that he must get copies from his attorney.

On January 16, 2018, Plaintiff submitted an inmate request stating "Im running a bad fever and throat swole and sore headache real bad feel real bad please I nd the nurse." (ECF No. 41-3, 10). Doug Wood responded informing Plaintiff he must submit a medical request to obtain medical attention. The following day, Plaintiff submitted a medical request stating, "I cant breathe my throat i swole I can't mke it ear head everything hurt." Nurse Mendenhall responded stating she would be taking him to see the doctor. (ECF No. 41-5, p. 7).

On January 18, 2018, Plaintiff was admitted to the Ouachita County Medical Center for a peritonsillar abscess. (ECF No. 41-9, p. 2). The doctor's notes show Plaintiff complained he had suffered a sore throat for one and a half weeks, but the notes do not reflect any remarks by Plaintiff about mold or any other jail condition being the suspected cause of the problem. *Id.* The information sheet in the medical records states, "[t]he infection that leads to a peritonsillar abscess is usually caused by the streptococcal bacteria." *Id.* On January 21, 2018, Plaintiff was diagnosed and treated for peritonsillar abscess at the Ouachita County Medical Center. The following day Plaintiff's Tramadol, Meloxicam, Gabapentin, Prednisone, and Bactrim medications were approved to be administered at the OCDC. (ECF No. 41-4, p. 17).

On February 1, 2018, Plaintiff submitted an inmate grievance stating, "black mod all on walls bad im in haling this and every body hur I done gt sick again for this coughing badly its all on walls Request to see about this problem very serious." Doug Wood responded, "Mr. McRae there is no 'black mold' on the walls of the pod. If anything at all there may be some soap on the shower walls. Cleaning supplies are brought to the pod daily. You can do your part and help clean if you would like." (ECF No. 41-3, p. 2). That same day, Plaintiff submitted two medical requests stating, "inhaling black mod real dangerous im sick again coughing and chest hurt badley" and "I have a total hip replacement my hip hurts and swells up why did meds gt cut I have own insurance and no county been using my insurance." (ECF No. 41-5, p. 7). As a result of his medical requests, Plaintiff was prescribed Tramadol, Meloxicam, and Gabapentin by the OCED physician the following day. *Id.* at p. 6.

On February 2, 2018, Plaintiff submitted an inmate request stating, "its under my rake all on the wall not shower im not touching that is dangerous cant use mop it will spread sum one need too look in this it is black mod." Doug Woods responded saying, "Mr. Mcrae Mold does not grow unless it has constant water that goes stagnant there is no water under your bed. That is prob the black rubber people keep pulling out of the door." (ECF No. 41-3, p. 9).

On February 21, 2018, Plaintiff submitted an Inmate medical request saying, "some one and pod gt tb and we are expose im getting sick throat hurt and black mod every wur under my rake walls shower and person on tb expose us." Nurse Mendenhall responded stating, "I am not aware of anyone in your pod having active TB. The other issues are to be addressed with the shift supervisor." (ECF No. 41-5, p. 5).

On March 21, 2018, Plaintiff submitted a grievance stating:

As outlined in 42 U.S.C. 1997e(a) I am exhausting this grievance procedure regarding prison conditions. I and others have complained numerous times over the

> waste-water all must walk through to get to the toilets in G POD. I have an infected toe now and must walk through this unsanitary waste everyday and on 3-21-2018 the nurse told me (I was taken off the doctor list by someone here at the prison.) I have an infected open wound on my big toe on the left foot due to the negligence and poor prison conditions. Everytime an inmate showers the bathroom floods. Prison doesn't supply proper cleaning meterials after 5 p.m.

(ECF No. 41-3, p. 1). In response to the grievance, Defendant Owens stated, "We have just had plumbers fix everything on 3/20/18." *Id.*

On March 20, 2018, Plaintiff submitted a medical request stating, "my foot sleeping problems and hip is getting worser I been putting on this kisosk for two months gt denied medical attention I nd help with these problems." (ECF No. 41-5, p.2). In response, Nurse Mendenhall informed Plaintiff he had been added to the doctor's list. On March 21, 2018, Plaintiff was prescribed Bactroban and daily wound care by the OCDC's physician. (ECF No. 41-5, p. 3).

On March 28, 2018, Plaintiff submitted a medical request stating, "my feet is swole infected meds not working." (ECF No. 41-5, p. 2). Nurse Mendenhall let him know he had been placed on doctor's list. *Id.* The next day, Plaintiff was prescribed Bactroban, Seroquel 50 mg, Bactrim, and Motrin 800mg by the OCDC physician. (ECF No. 41-5, p. 1).

Defendant Owens is the Jail Administrator of the OCDC. He provided an affidavit stating Plaintiff did not file any grievances regarding the following claims: cracked dinner trays being placed on the floor, no rags or bottles provided to sanitize the bathroom, and hot prepared food being served cold. (ECF No. 41-1, p. 2). Defendant Owens also states he was not personally involved in the medical treatment of Plaintiff. *Id.* at p. 1. In addition, Defendant Owens states he has no authority to override the decision of the medical staff of the OCDC. *Id.* at pp. 4-5. Further, he represents no employee of the OCDC is authorized to make non-emergency medical decisions on behalf of any inmate and all decisions regarding medications, medical testing, or medical

treatment are left to the professional medical judgment of the physician at the OCDC. (ECF No. 41-1, p. 5).

Periodically, the OCDC has plumbing issues primarily resulting from inmates who place objects in toilets and drains to make the toilets or drains overflow. *Id.* at pp. 1-2. When the OCDC learns of an issue involving plumbing, it immediately orders one or more trustee inmates to attempt to correct the plumbing issue. If the trustee inmate is unable to correct a plumbing issue, the OCDC hires a professional plumber to correct the issue as soon as possible. *Id.* at p. 2. On March 20, 2018, "a plumber was hired to correct, and did correct, an issue in which the shower drains were not draining properly." (ECF No. 41-1, p. 2).

The inmates at the OCDC clean the showers daily. Inmates are also provided with cleaning supplies daily such as mops, brooms, soap, bleach, and a liquid cleaning agent to clean the cells and showers. The floors, walls, and doors are swept, mopped, and cleaned daily or as often is necessary. Toilets, urinals, sinks, and showers are cleaned daily. Visual inspection of the OCDC is conducted hourly on each shift. In the event an issue is discovered, the OCDC officers are required to take appropriate and corrective measures to ensure a clean, orderly, and odor-free facility. (ECF No. 41-1, pp. 2-5). In addition, the OCDC is inspected on a yearly basis by the Arkansas Criminal Detention Facilities Review Committee. The inspections conducted during the time Plaintiff has been incarcerated in the OCDC do not reveal or note any uncleanliness or inadequate living conditions. *Id.* at p. 3.

The OCDC does not have a law library. Instead, Defendant Owens states the inmates are granted access to the courts through their attorneys. (ECF No. 41-1, p. 4).

On December 6, 2018, Defendant Owens filed the instant Motion for Summary Judgment arguing: 1) Plaintiff was not subjected to unconstitutional conditions of confinement and Plaintiff

failed to administratively exhaust some of these claims; 2) Plaintiff cannot meet his burden of proving retaliation; 3) There is no proof of any personal involvement by Defendant Owens in Plaintiff's medical care; 4) Defendant Owens was not deliberately indifferent to Plaintiff's medical needs; 5) Defendant Owens did not deny Plaintiff access to the Courts; and 6) Defendant Owens is entitled to qualified immunity. (ECF No. 39). On December 27, 2018, Plaintiff filed an unverified Response stating in part:

> …Knowing that the Jail administrator once was a officer sent me to prison in the past. Which that's conflict of interest. I had a incident with…Cameron Owens. Owens sent me to prison…I'm here in this pod were the water is nasty, black mold around the sink and toilet. Nats all over the walls and shower. I was though in the whole in mistreated me real bad….Owens ..have something against me. I am being Judge from my past history…My throat has puss in it…It actually taken them a month to take me to the doctor. They charge me for medical but they finally took me to the hospital also they made me use my own insurance. I had to pay for meds and hospital visits.

(ECF No. 45).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient

evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

#### A. Conditions of Confinement

Plaintiff claims he was subjected to unconstitutional conditions of confinement at the OCDC.  Specifically, Plaintiff claims:

> There is still black mold growing in my pod, wastewater covering the bathroom floor at all times, cracked dinner trays being put on the floor during chow, no rags or bottles to sanitize the bathroom, hot prepared food being served cold…I been sick and have incurred numerous medical bills, lost wages, and pain & suffering.

(ECF No. 9, p. 7).

1. Failure to Exhaust Administrative Remedies

The Court will first address Defendants' argument that Plaintiff failed to exhaust his administrative remedies with respect to three of his claims for conditions of confinement.

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust

administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

A review of the summary judgment record confirms Plaintiff did not file any grievances relating to his claims that cracked dinner trays were placed on the floor during chow, no rags or bottles were provided to sanitize the bathroom, or hot food was served cold. In addition, Plaintiff has not presented any evidence that Defendant Owens, or any other OCDC official, either prevented Plaintiff from utilizing the grievance procedure or failed to comply with the procedure themselves. Accordingly, Defendant Owens is entitled to summary judgment on Plaintiff's claims for cracked food trays, no rags or bottles for sanitation, and hot food served cold. These claims will be dismissed without prejudice.[4]

2. Black Mold and Wastewater

Plaintiff alleges he was subjected to unlawful conditions of confinement because there was mold in the showers and sinks and wastewater is on the bathroom floors "at all times".

"[W]hen the State takes a person into its custody and holds him there against his will, the constitution imposes upon it a corresponding duty to assume some responsibility of his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The

---

[4] Claims that are dismissed for failure to exhaust administrative remedies should be dismissed without prejudice. *See Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003).

constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same."). Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. Claims for unlawful conditions of confinement include threats to an inmate's health and safety. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citation omitted).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. However, courts are not concerned with *de minimis* levels of imposition on inmates. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979).

"[I]mates are entitled to reasonably adequate sanitation [and] personal hygiene…particularly over a lengthy course of time." *Beaulieu v. Ludeman*, 690 F.3d 1017 (8th Cir. 2012) citing *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). "Conditions, such as a filthy cell, may be tolerable for a few days and intolerably cruel for weeks or months." *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (quotations and citations omitted); *see also Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996)

(holding that where plaintiff was subjected to an "overflowed toilet in his cell for four days," such "allegations regarding 'raw sewage' d[id] not rise to a level of constitutional significance' because plaintiff 'did not allege that he was exposed to disease or suffered any other consequences of the exposure' and was 'offered an opportunity to flush the toilet and to clean up the mess but he declined'"); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (holding no Eighth Amendment violation where prisoner was confined to unsanitary cell for eleven days and noting that cleaning supplies were available to the prisoner).

Although reasonably adequate sanitation is a basic identifiable human need, the Court finds no evidence Defendant Owens was deliberately indifferent to Plaintiff's health or safety. At the OCDC, inmates are provided with cleaning supplies daily to clean the showers and cells. Plaintiff was free to request cleaning materials and use them as he saw fit. Moreover, other than Plaintiff's unsubstantiated allegations, there is no evidence of black mold in the showers or sinks. To the contrary, an inspection of the OCDC by the Arkansas Criminal Detention Facilities Review Committee made no mention of any mold or other unsanitary condition during Plaintiff's incarceration.

In addition, Plaintiff's allegation concerning wastewater on the bathroom floors "at all times" is not supported by the facts. On March 21, 2018, Plaintiff submitted his only grievance related to water on the jail floor, which stated the bathroom flooded every time an inmate showered. Defendant Owens responded to the grievance the next morning pointing out plumbers fixed the problem on March 20, 2018. Plaintiff did not submit any other grievances regarding wastewater or sewage issues. Accordingly, Defendant Owens is entitled to summary judgment on Plaintiff's condition of confinement claims relating to black mold and wastewater.

## B. Retaliation

Plaintiff alleges Defendant Owens retaliated against him by placing him in administrative segregation for utilizing the jail's grievance system. Generally, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)). The retaliatory conduct itself need not be a constitutional violation to be actionable. Additionally, there is no independent injury requirement when retaliatory conduct is involved. *See Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994). To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected action. *See L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo.,* 673 F.3d 799, 807-8 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

Retaliation claims fail "if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). Therefore, "a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Id.* "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Id.* at 831.

The Eighth Circuit has reviewed and upheld the dismissal of a plaintiff's complaint that alleged retaliation for filing grievances. In *Orebaugh v. Caspari*, 910 F.2d 526 (8th Cir. 1990), the Court determined although the plaintiff claimed he was disciplined in retaliation for filing a grievance, the claim failed because the plaintiff violated the prison's rules for a few different incidents, including one

where the plaintiff got into a scuffle with another inmate. The Court found "[o]ne officer's testimony was sufficient to constitute some evidence" the plaintiff violated the prison's rules by scuffling with another inmate. *Id.*

Here, Plaintiff's claim he was placed in administrative segregation for filing grievances is contrary to the facts. On September 13, 2017, OCDC Officer Cody Bright documented an incident involving Plaintiff's altercation with another inmate. Based on the video tape and reports from witnesses, it was determined Plaintiff was the aggressor. Plaintiff was then searched and taken with his belongings to administrative segregation for being disorderly. (ECF No. 41-7, p. 2). The summary judgment record establishes the disciplinary action taken against Plaintiff resulted from Plaintiff's own misconduct and violation of the OCDC's rules. Accordingly, Defendant Owens is entitled to summary judgment on Plaintiff's claim for retaliation.

### C. Denial of Medical Care

Plaintiff alleges Defendant Owes denied him medical care when "it took over 14 days to get me to the hospital …the jail refused to pay my hospital bill….". (ECF No. 9, p. 7). The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendant Owens acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson

17

would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Defendant Owens does not dispute Plaintiff suffered from a serious medical condition. Indeed, the record demonstrates Plaintiff's infected throat was serious enough to warrant prescription of medication at the OCDC and hospitalization on one occasion. Accordingly, the Court assumes for purposes of this opinion Plaintiff had a serious medical condition. The question before the Court now becomes whether Defendant Owens' actions, or lack thereof, rose to the level of a constitutional violation.

Deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 105. However, "[b]ecause vicarious liability is inapplicable to …§ 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Thus, "each Government official-defendant, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677.

Defendant Owens is the Jail Administrator at the OCDC. He submitted an affidavit stating he had no personal involvement in the medical care provided to Plaintiff. (ECF No. 41-1, p. 2). He also states all decisions regarding medications, medical testing, and medical treatment are left to the professional medical judgment of the physician at the detention facility. *Id.* at p. 5. Other than Plaintiff's bare bone allegations, there is nothing in the summary judgment record to demonstrate Defendant Owens

was personally involved in Plaintiff's medical care at the OCDC or that he had any direct responsibility for any alleged delay in the care Plaintiff was provided.

In addition, Plaintiff's claims his constitutional rights were violated when the jail did not pay his hospital bill. This claim fails as a matter of law. It is well established that requiring inmates to pay for their own medications, if they can afford to do so, is not a federal constitutional violation. *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999). Prisoners do not have a clearly established right to receive free medical care. *Reynolds v. Wagner*, 128 F.3d 166, 174 (3rd Cir. 1997).

Accordingly, Defendant Owens is entitled to summary judgment on Plaintiff's claim of inadequate medical care.

### D. Access to Courts

Plaintiff alleges his constitutional rights were violated because "there is no law library or law material here at the jail I have incurred numerous postage cost and possible missed deadline in not being able to access legal materials…" (ECF No. 9, p. 8).

The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). Prison officials must provide inmates with "meaningful access to the courts." *Bounds,* 430 U.S. at 824. However, an inmate has no standing to pursue an access claim unless he can demonstrate he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis v. Casey,,* 518 U.S. 343, 351-352; *see also Farver v. Vilches,* 155 F.3d 978, 979-980 (8th Cir.1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir.1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993).

Defendant Owens correctly points out Plaintiff did not file any grievance specifically requesting to visit a law library. However, Plaintiff did submit a grievance requesting to talk to "someone who can help me please" with a legal question. (ECF No. 41-3, p. 3). In response to this grievance, Doug Wood told Plaintiff to contact his attorney. Defendant Owens represents to this Court the OCDC provides adequate access to the courts by providing the inmates access to their attorneys. (ECF No. 41-1, p. 4) Plaintiff has offered no summary judgment evidence to refute this statement.

Here, Plaintiff's claim his constitutional rights were violated because the OCDC does not have a law library fails because he was provided access to his attorney. In addition, Plaintiff has failed to provide the Court with any evidence he suffered any prejudice. He simply claims he "possible missed deadlines" in a pending civil case and incurred "numerous postage cost." Accordingly, Defendant Owens is entitled to summary judgment on this claim.

## CONCLUSION

For the reasons stated above, Defendant Owen's Motion for Summary Judgment (ECF No. 39) is **GRANTED**. Plaintiff's condition of confinement claims based on cracked dinner trays put on the floor during chow, no rags or bottles provided to sanitize the bathroom, and hot food being served cold are **DISMISSED WITHOUT PREJUDICE.** All other claims against Defendant Owens are hereby **DISMISSED WITH PREJUDICE.**[5]

A judgment of even date consistent with this opinion shall issue.

**IT IS SO ORDERED** this **19th day of March 2019**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[5] Because the Court finds there are no violations of Plaintiff's constitutional rights, it is not necessary for the Court to address the issue of qualified immunity.